IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>KENNETH J. ARTHURS and BRENDA L. ARTHURS,<br>　　　　　Debtors,<br><br>PEOPLES NATURAL GAS COMPANY LLC,<br>　　　　　Movant,<br>　　vs.<br>KENNETH J. ARTHURS and BRENDA L. ARTHURS,<br>　　　　　Respondents. | Bankruptcy Case No. 15-70795-JAD<br>Chapter 11<br>Related to Docket No. 250<br><br>Disclosure Statement<br>Hearing: 2/9/18 @ 10:00 a.m. |

## **OBJECTION TO DISCLOSURE STATEMENT DATED SEPTEMBER 21, 2017**

AND NOW comes Peoples Natural Gas Company LLC, by and through its counsel, S. James Wallace, P. C., a professional corporation, and makes this Objection to the Disclosure Statement dated September 21, 2017 of which the following is a statement:

1. Peoples Natural Gas Company LLC (hereinafter "Peoples") is a Pennsylvania public utility serving Western Pennsylvania with its headquarters at 375 North Shore Drive, Pittsburgh, PA 15212.

2. Debtors are Kenneth J. Arthurs, and Brenda L. Arthurs, his wife; hereinafter the "Debtors".

3. Debtors have filed a disclosure statement and proposed Plan in this case.

4. The purpose of the disclosure statement is to disclose to the creditors all the material facts affecting the debtor's financial position and their likelihood of success under the proposed plan.

5. Since the filing of the disclosure statement, new facts have become known to Peoples which are not contained in the disclosure statement and which would be of material interest to creditors reviewing the plan and determining how to vote.

6. These facts have become known due to a lease submitted by Debtor Brenda L. Arthurs to Peoples Gas. The circumstances under which this lease was provided are described hereafter. A true and correct copy of the said lease is incorporated herein by reference and attached hereto as Exhibit "A".

## PART I: FAILURE TO DISCLOSE RENTAL OBLIGATIONS AND PAYMENTS

7. The averments of the preceding paragraphs are incorporated herein by reference as if set forth in full in this paragraph.

8. The Debtors own a commercial building known as 560 Philadelphia Street in Indiana, Pa. 15701; hereinafter known as "560 Philadelphia".

9. 560 Philadelphia is within the Peoples Gas service area.

10. There is a commercial building which immediately adjoins 560 Philadelphia known and numbered as 564-566-568 Philadelphia Street in Indiana, Pa., 15701; hereinafter known as "564 Philadelphia".

11. 564 Philadelphia is within the gas service area of Peoples, and is supplied with gas by Peoples.

12. 560 Philadelphia is owned by the debtors.

13. 564 Philadelphia is owned by Alice Semsick.

14. Alice Semsick is a close relative of the debtors (aunt) and apparently works with the debtors in operating the business known as Grub's Sports Bar (hereinafter "Grubs").

15. Peoples issued a termination notice notifying the occupants that service to 564 Philadelphia, the property of Alice Semsick, would be terminated for non-payment.

16. In response to this termination notice, Debtor Brenda L. Arthurs submitted the attached lease, claiming to be a tenant and seeking to pay the (much smaller) "tenant payment" to prevent the termination of gas service.

17. The lease indicates that the debtors (not NCK) are the lessees of the first floor commercial space in 564 Philadelphia. The Debtors apparently operate the business known as "Grub's" in this space.

18. This lease commenced on January 1, 2014.

19. This lease provides for a rental payment of $2,000.00 per month to be made by the Arthurs to Alice Semsick.

20. Peoples has reviewed the petition and Schedules and does not find this obligation listed.

21. Peoples has reviewed the annual summary operating reports attached to the disclosure statement and has found no evidence that this obligation has been disclosed and no evidence that this obligation is being or has been paid.

22. Peoples has reviewed a number of the separate monthly operating reports and cannot determine if this obligation is listed or if this obligation is being paid.

23. The existence of this obligation and its non-payment are of significant material interest to the creditors, since, if paid as required, it would completely wipe out the profit shown on the operating report attached to the disclosure statement.

## PART II:  FAILURE TO DISCLOSE LIABILITY FOR UTILITY PAYMENTS

24. The averments of the preceding paragraphs are incorporated herein by reference as if set forth in full in this paragraph.

25. In the aforementioned lease, (Exhibit "A"), under a section entitled "Utilities and Taxes", (see second page), the lease provides that the "Lessee shall pay all charges incurred for the furnishing of public utilities to said premises, including any deposits required for any utilities or taxes".

26. As set forth above, the lease began January 1, 2014.

27. As of September 17, 2015, 564 Philadelphia had incurred a gas bill exceeding $37,000 in the name of Alice Semsick.  This has been reduced to a judgment against Alice Semsick in the face amount of $37,719.39.

28. From September 17, 2015 through October 12, 2017 564 Philadelphia has incurred an additional unpaid debt for gas service in the amount of $9,680.92.

29. The gas bill has remained at all times in the name of Alice Semsick.

30. The lease (Exhibit "A") makes the debtors responsible to Alice Semsick for some or all of this debt.

31. This liability is not disclosed in the disclosure statement or anywhere else.

32. Additionally, under these circumstances, it appears that the debtors are hiding their utility expense under someone else's name to avoid disclosing it to the Bankruptcy court.

33. In addition to the substantial liability set forth above, the debtors have accrued an additional unpaid post-petition debt for gas service to their residence at 122 South 6th Street in

the amount of $2,333.42 as of November 10, 2017.  This debt is also not disclosed in the disclosure statement.

34.   The existence of these unpaid debts materially alters the profit and loss statement attached by the debtors to their disclosure statement and is of material interest to creditors evaluating the proposed Plan.

### PART III : POTENTIAL ILLEGAL HOOKUP

35.   The averments of the preceding paragraphs are incorporated herein by reference as if set forth in full in this paragraph.

36.   The disclosure of the lease (Exhibit "A") has caused Peoples to look more closely into the relationships between these parties.

37.   560 Philadelphia received gas service from Peoples through an account in the name of Wolfendale's.  The account showed significant usage.

38.   The account for 560 Philadelphia was terminated for non-payment on or about September 3, 2014.

39.   Since that time, there has been no gas service to 560 Philadelphia.

40.   Given the significant prior usage, and the existence of both the commercial space and the multiple residential units in 560 Philadelphia, it is possible but highly unlikely that this building has been wholly converted to another form of energy.

41.   The size of the usage for 564 Philadelphia Street, the adjoining building owned by Alice Semsick, is unusually high.

42. Peoples reasonably believes and therefore avers that an illegal feed may have been run from the gas piping at 564 Philadelphia to the gas piping at 560 Philadelphia, causing the meter at 564 to supply both properties. Peoples is in the process of seeking access to the property to inspect the lines and determine the situation here, and may apply to this court, if necessary, for an order granting access to the property.

43. If such an unpermitted connection has been made, such a connection violates numerous statues and would have to be immediately removed. One of the many would be 66 Pa. C.S.A. §1529 which requires any meter serving more than one residential unit to be in the name of the property owners. 560 Philadelphia cannot be attached to a meter in someone else's name serving another property.

44. If such a connection has been made, debtors are again hiding their utility bills attributable to 560 Philadelphia in the name of another person, and have failed to disclose this liability in the disclosure statement.

45. Such an illegal connection made without approval or inspection would also constitute a potential hazard to life and property, and would have to be removed immediately.

46. Until the connection is removed, gas service would have to be off to the building, affecting the debtors' business operations and income. Additionally, before such service could be restored, debtors would be required to obtain a licensed plumber, correctly re-route the gas lines, obtain an inspection, and apply for new service with the required deposit, incurring additional expense and delay.

47. This information would be material to creditors considering the plan for several reasons. First, it hides a significant operating expense, namely the gas used for 560 Philadelphia. Second, if such a connection has been made it must be immediately removed; which would

require debtors to re-route the gas piping, obtain an inspection by a plumber and a request a new gas meter with attendant security deposit.

WHEREFORE, Peoples Gas respectfully objects to the Disclosure Statement as it fails to disclose material facts necessary for the creditors to make an informed decision on the proposed plan.

Dated:  November 22, 2017            Respectfully submitted,

S. James Wallace, P. C.
a professional corporation

By:    /s/ S. James Wallace
Pa. ID# 28815
Attorney for Peoples Natural Gas Co., LLC
845 North Lincoln Avenue
Pittsburgh, Pa. 15233-1828
412-652-9134
sjw@sjwpgh.com